UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | IN ADMIRALTY |
| ALAKAI (O.N. 1182234), their boilers, engines, machinery, masts, spars, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances, etc., *in rem*, | Civil No.: 2:10cv232 |
| Defendant. | |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO
AUSTAL USA, LLC'S CROSS MOTION FOR SUMMARY JUDGMENT**

Austal USA, LLC's (Austal) Memorandum in Partial Opposition to Plaintiff's Motion for Summary Judgment and in Support of Its Cross Motion for Summary Judgment (the "Austal Opposition") fails to establish that its interest in the Defendant Vessels is anything other than a Second Preferred Mortgage, i.e., subordinate to the United States' First Preferred Mortgage. Austal's argument is based on language from an inapplicable document, as well as an unreasonable misreading of a provision in its Second Preferred Mortgage. Because the evidence establishes that Austal's interest in the Defendant Vessels was conceived as and remains a Second Preferred Mortgage, subordinate to the United States' First Preferred Mortgage, Austal's Cross Motion for Summary Judgment should be denied.

I.  **The language Austal cites from its <u>Subordinated</u> Loan Agreement with the shipowner is inapposite and does not appear in the Austal's Second Preferred Mortgage.**

Austal relies on language contained in a Subordinated Loan Agreement between itself and the shipowner, Hawaii Superferry, Inc., to support its position that its Second Preferred Mortgage is, despite its clear language and title, equal to the United States' First Preferred Mortgage.  Austal Opposition at 7.[1]  While incorporated into Austal's Second Preferred Mortgage, the Subordinated Loan Agreement is inapposite in this case, and does not confer additional rights on Austal.  The Subordinated Loan Agreement concerns the terms of the loan between Austal and the shipowner, Hawaii Superferry, Inc., and that loan's relation with the shipowner's other debt under the government-guaranteed Title XI financing.

Because the shipowner's debts were discharged in bankruptcy, and the Title XI guarantee was paid by the Maritime Administration, the remaining security interests held by Austal and the United States are their respective mortgages on the Defendant Vessels.  Therefore, the proper inquiry does not concern debts created and discharged in earlier transactions, but whether one current mortgage interest is preferred over the other.  The

---

[1] The document upon which Austal relies, entitled "Subordinated Loan Agreement," is attached as Exhibit C.  Though it is irrelevant to the question of whether Austal's Second Preferred Mortgage is subordinate to the United States' First Preferred Mortgage, even the Subordinated Loan Agreement clearly establishes that, prior to the shipowner's default and bankruptcy, the United States' position was superior to that of Austal.

titles of the documents creating the interests, as well as their terms, make possible only one conclusion: that the First Preferred Mortgage held by the United States is superior, and the Second Preferred Mortgage held by Austal is subordinate.

The Subordinated Loan Agreement's definition of "Senior Indebtedness" is inapplicable to this foreclosure action, which deals only with the First and Second Preferred Mortgages held by the United States and Austal, and the debts secured by those mortgages. In fact, the term "Senior Indebtedness" never appears in Austal's Second Preferred Mortgage. Any agreements that existed prior to Hawaii Superferry's default, the liquidation of the "Senior Indebtedness" through the United States' payment of its Title XI guarantees, and the arrest and foreclosure of the Defendant Vessels, are irrelevant to whether one mortgage is subordinate to the other. Because the United States holds a First Preferred Mortgage, which takes priority over the explicitly subordinate Second Preferred Mortgage held by Austal, the United States' interest is superior.

**II.     The phrase "may exercise the rights and remedies provided for herein" does not create new rights, and does not affect the subordination of Austal's claim.**

Austal's second argument misreads and takes out of context a provision of its Second Preferred Mortgage. Austal's Second Preferred Mortgage establishes that its rights are subordinate to those of the United States. Austal concedes that without a superior interest in the Vessels, the United States would not have guaranteed the financing of the Vessels. Austal Opposition at 9. The Title XI guaranteed financing

facilitated the construction and purchase of the Vessels, and benefitted not only the shipowner, but also Austal as the shipbuilder.

In order to sell its ships to the shipowner, Austal rationally subordinated its mortgage interest to help the shipowner obtain financing. In recognition of the extent of the subordination of Austal's mortgage, its Article V, section 1(c) initially prohibited Austal's exercise of its mortgage rights as the United States asserted its rights. Only after the arrest and foreclosure of the Defendant Vessels did section 1(c)(iii) allow Austal to intervene here. Section 1(c)(iii) does not, however, affect the United States' superior rights under the First Preferred Mortgage, and it does not negate the extensive language in the Second Preferred Mortgage that establishes the subordinate nature of Austal's rights. The phrase "may exercise the rights and remedies provided for herein" does not change those rights and remedies, which remain always subordinate to the United States' rights and remedies.

Austal has pointed to no language allowing it to recover a *pro rata* share of any sale proceeds in a foreclosure of the Vessels. Austal instead argues that the subordination was intended only to confer eligibility for the guarantee, and not to protect the American taxpayers' interest. This argument is without merit. Austal benefitted directly from the financing that was guaranteed by the government, which was obtained specifically because Austal agreed to provide a portion of the financing to the shipowner, and to subordinate its interests to those of the United States. Austal had a strong incentive to

4

place 10% of the financing of the Vessels at risk, knowing that it would be paid the other 90% through government-guaranteed financing. That Austal might not recover the amount it advanced for construction of the Vessels was contemplated in its agreements with the shipowner and the Maritime Administration, and its attempt to circumvent the provisions of its Second Preferred Mortgage are without merit.

**III.    Conclusion**

Austal's argument that its mortgage interest is equal to that of the United States, and that it is entitled to a *pro rata* share of the sale proceeds is belied by the extensive language in the Second Preferred Mortgage that establishes the subordinate nature of Austal's interest. Austal had every reason to accept a subordinate position to the United States in order to facilitate the construction and sale of the Defendant Vessels. The United States, likewise, was required to ensure that its interests were protected in the event of a default that would require payment of the guarantee. Because Austal's Second Preferred Mortgage is subordinate to the United States' First Preferred Mortgage, Austal's Cross Motion for Summary Judgment should be denied.

    Respectfully submitted,

    TONY WEST
    Assistant Attorney General

      S/Edmund M. Ferguson
    EDMUND M. FERGUSON
    Virginia State Bar 74877
    Trial Attorney

        PETER G. MYER
Senior Trial Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC 20044-4271
(202) 616-4029
Fax: (202) 616-4159
Edmund.Ferguson@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 17th day of December, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Richard Hooper Ottinger | Michael J. Schrier |
| Vandeventer Black LLP | Rolf Marshall |
| 500 World Trade Ctr | K&L Gates LLP (DC) |
| Norfolk, VA 23510 | 1601 K Street NW |
| (757) 446-8600 | Washington, DC 20036 |
| Fax: 757-446-8670 | 202-778-9249 |
| Email: rottinger@vanblk.com | Fax: 202-778-9100 |
| *Attorney for Hornblower Marine Services, Inc.* | Email: michael.schrier@klgates.com |
| | Email: rolf.marshall@klgates.com |
| | *Attorneys for Austal USA, LLC* |

      s/Edmund M. Ferguson
      EDMUND M. FERGUSON
      Virginia State Bar 74877
      Trial Attorney
      Torts Branch, Civil Division
      U.S. Department of Justice
      P.O. Box 14271
      Washington, DC 20044-4271
      (202) 616-4029
      Fax: (202) 616-4159
      Edmund.Ferguson@usdoj.gov