# Exhibit C

## SUBORDINATED LOAN AGREEMENT

THIS SUBORDINATED LOAN AGREEMENT ("Agreement" or "Subordinated Loan Agreement") is made as of this 9th day of April 2004, by and between HAWAII SUPERFERRY, INC., a Hawaii corporation (the "Borrower"), and AUSTAL USA, LLC, an Alabama limited liability company (the "Subordinated Lender").

### RECITALS

WHEREAS, the Borrower and the Subordinated Lender have entered into Shipbuilding Contracts, each dated as of April 9, 2004 (individually, a "Shipbuilding Contract" and collectively, the "Shipbuilding Contracts"), for the construction by the Subordinated Lender of two 105 meter high-speed passenger/car vessels presently identified as Yard No. 615 and Yard No. 616 (each a "Vessel" and, collectively, the "Vessels") to be operated in the Hawaiian islands;

WHEREAS, the Subordinated Lender has agreed to provide financing to the Borrower equal to 10% of the Basic Purchase Price of the Vessels, as adjusted pursuant to the Shipbuilding Contracts, in the form of subordinated debt;

WHEREAS, contemporaneously with the execution of this Agreement, the Borrower has executed a Subordinated Promissory Note in favor of the Subordinated Lender with respect to each Vessel, substantially in the form of Appendix 1 hereto (the "Subordinated Note"), dated the date hereof, payable with interest and upon the terms and conditions described therein;

WHEREAS, pursuant to Title XI of the Merchant Marine Act, 1936, as amended, the Borrower is applying for a commitment from the United States of America, represented by the Secretary of Transportation, acting by and though the Maritime Administrator (the "Secretary"), to guarantee the financing of a portion of the Actual Cost (as defined in 46 C.F.R. § 298.2) of construction of the Vessels in consideration for the Borrower's grant to the Secretary of security interests in certain collateral, including but not limited to either a first preferred fleet mortgage on the Vessels (the "Mortgage") or a first preferred mortgage on each Vessel (the "Mortgages"); and

WHEREAS, pursuant to 46 C.F.R. § 298.13(h), the parties have agreed to enter into this Agreement to ensure the subordination of the Subordinated Lender's rights hereunder to the rights of the Secretary under the Senior Loan Documents.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, and of other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. <u>Capitalized Terms</u>. Capitalized terms used and not defined in this Agreement shall have the meanings specified in Schedule X to the Security Agreement or the Shipbuilding

Contracts, as the case may be. For the purposes of this Agreement, the following terms shall have the following meanings:

"Distribution" means any cash payment of principal, interest, fees, advances, indemnities, or guarantees, with respect to any indebtedness owed by the Borrower to the Subordinated Lender.

"Senior Indebtedness" means the principal of and unpaid accrued interest on (i) the obligations to be issued by the Borrower to finance a portion of the Actual Cost of construction of the Vessels, which will be guaranteed by the Secretary under Title XI of the Merchant Marine Act, 1936, as amended ("Title XI"), and all related transaction documents thereto or (ii) any indebtedness or any debentures, notes or other evidence of indebtedness issued in exchange for or to refinance the aforementioned obligations.

"Senior Liens" means all liens, mortgages, security interests and/or other encumbrances of any nature or type, now or hereafter securing, in whole or in part, any of the Senior Indebtedness.

"Senior Loan Documents" means any agreements, documents, or instruments now or hereafter evidencing, securing or relating to all or any portion of the Senior Indebtedness, including, without limitation, the Secretary's Note, the Security Agreement, the Title XI Reserve Fund and Financial Agreement and the Mortgage or the Mortgages.

"Subordinated Note" means any agreement, document, or instrument now or hereafter evidencing or securing all or any portion of the debt evidenced by this Agreement, or purporting to create any liens, mortgage, security interests, encumbrances, or indebtedness of any nature or type.

2. Subordinated Loans.

(a) Subject to the terms and conditions of this Agreement and the Subordinated Notes, the Subordinated Lender agrees to make loans to the Borrower, from time to time, in the aggregate principal amount equal to 10% of the Basic Purchase Price of the Vessels, as adjusted pursuant to the Shipbuilding Contracts. Beginning with the fourth progress payment with respect to the Vessel presently identified as Yard No. 615 and the first progress payment with respect to the Vessel presently identified as Yard No. 616, and including the final progress payment made by the Borrower with respect to each Vessel, the Subordinated Lender will advance, within three (3) Business Days following the Subordinated Lender's receipt from the Borrower of the relevant progress payment under the applicable Shipbuilding Contract, 10% of the gross amount of such progress payment (disregarding any credits taken against any such progress payments for any earlier payments that may have been made by the Borrower to the Subordinated Lender under the applicable Shipbuilding Contract) to the Borrower in the form of a subordinated loan (individually a "Loan" and collectively, the "Loans"). Each Loan shall bear interest at a rate of 10% per annum from the date made to the date repaid. Each Loan shall be made to the Borrower by wire transfer of immediately available funds to an account designated by the Borrower.

2

(b) Principal and interest on the Loans shall be payable by the Borrower according to the following schedule:

(i) interest accrued annually on the Loans for each Vessel from the date made to the second anniversary of such Vessel's Actual Delivery Date shall be capitalized and added to the principal of the Subordinated Note on each anniversary of such Vessel's Actual Delivery Date;

(ii) interest on the Loans for each Vessel for the period commencing on the day following the second anniversary of such Vessel's Actual Delivery Date until maturity shall be paid on April 20th of the year following the third anniversary of the Vessel's Actual Delivery Date and on each April 20th thereafter; provided, however, that if, by the terms of any of the Senior Loan Documents, the Borrower is not permitted to make a Distribution in an amount equal to the interest that is otherwise due under this subparagraph (ii), the Borrower shall pay the portion, if any, of interest that that is then permitted to be paid under the terms of the Senior Loan Documents and any such interest that is not paid shall be added to the principal amount of the Subordinated Note and shall be paid at the earliest subsequent date that, and to the extent that, the Borrower is permitted to make a Distribution under the Senior Loan Documents;

(iii) principal of the Loans for each Vessel, together with all accrued and unpaid interest, shall become due and payable on the fifth anniversary of the Actual Delivery Date of such Vessel; provided, however, that if, by the terms of any of the Senior Loan Documents, the Borrower is not permitted to make a Distribution in an amount equal to the principal that is otherwise due under this subparagraph (iii), the Borrower shall pay the portion, if any, of principal that is then permitted to be paid under the terms of the Senior Loan Documents and any such principal that is not paid on such date shall be paid at the earliest subsequent date that, and to the extent that, the Borrower is permitted to make a Distribution under the Senior Loan Documents; and

(iv) to the extent of Distributions that are permitted by the Senior Loan Documents from time to time, the Borrower agrees to make prepayments of principal on the Loans at the earliest permitted dates.

(c) All payments of principal and interest on the Subordinated Notes shall be made by wire transfer of immediately available funds to an account designated by the Subordinated Lender. If any payment of principal or interest on this Subordinated Note is due on a day which is not a Business Day, such payment shall be due on the next succeeding Business Day, and such extension of time shall be taken into account in calculating the amount of interest payable under this Subordinated Note.

(d) Failure by the Subordinated Lender to make any of the Loans specified herein within five (5) Business Days of the dates required under paragraph 2(a) shall constitute a material breach of the Subordinated Lender's obligations under this Agreement and the

3

Shipbuilding Contracts. In such event, the Borrower shall be entitled to terminate the Shipbuilding Contracts and exercise its rights under Clause 10.3 of the Shipbuilding Contracts.

3. <u>Conversion</u>. If the Subordinated Lender defaults on its obligations under either of the Shipbuilding Contracts, the Subordinated Note shall immediately be converted into redeemable preferred stock with the rights and preferences set forth in Appendix 2.

4. <u>Subordination</u>. Notwithstanding any of the terms of this Agreement, the Subordinated Lender's right to receive and retain the Borrower's payment of any funds, money or other rights to which it is now or hereafter entitled under the Subordinated Note or any other Distributions shall be subordinated to the rights of the Secretary to receive and retain the Borrower's payment of all amounts due under the Senior Indebtedness; <u>provided, however,</u> that the Borrower may make payments to the Subordinated Lender as set forth below in Section 5.

5. <u>Limitation on Payments</u>. Notwithstanding anything to the contrary contained herein, so long as (a) no default, or event which with notice or the passage of time or both would constitute a default, has occurred or is continuing under or with respect to the Senior Indebtedness, and (b) the Subordinated Lender is in compliance with all the terms and conditions of this Agreement and the Subordinated Note, then the Borrower may repay and prepay the Subordinated Note, but then only to the extent the Borrower is permitted to make Distributions under the terms of the Senior Loan Documents. No other Distributions shall be permitted by the Borrower to the Subordinated Lender.

6. <u>Rights of Senior Indebtedness</u>.

(a) In the event a default, or event which with notice or the passage of time or both would constitute a default, has occurred under or with respect to the Senior Indebtedness and has not been cured, the Borrower may not make payments on the Subordinated Note or make any other Distributions unless and until the default has been cured or the Senior Indebtedness has been paid in full. The Subordinated Lender agrees not to retain any such payments or Distributions.

(b) In the event a default, or event which with notice or the passage of time or both would constitute a default, has occurred under or with respect to either Subordinated Note, and unless and until the Senior Indebtedness has been paid in full, the Subordinated Lender may not accelerate any payments due under the applicable Subordinated Note or execute on any other tangible or intangible assets of the Borrower or join in a petition to commence an involuntary case against the Borrower under the United States Bankruptcy Code (11 U.S.C. § 303) or to otherwise have the Borrower adjudicated insolvent. The sole remedy of the Subordinated Lender, which they may invoke only upon obtaining the prior written consent of the Secretary, is limited to an action to recover unencumbered cash of the Borrower.

7. <u>Distributions By the Borrower</u>.

(a) The Subordinated Lender agrees (i) to subordinate its rights under the Subordinated Notes and any Distributions set out in this Agreement, (ii) not to seek payment of

4

any sums under the Subordinated Notes if such payment would be contrary to the provisions of this Agreement and (iii) to turn over promptly to the Secretary any payment on the Subordinated Notes or any other Distributions made in violation of this Agreement without any requirement for notice, demand or any other action by the Secretary.

(b) Upon the occurrence of a default by the Borrower under any of the Senior Loan Documents or (i) any distribution of assets of the Borrower in connection with any dissolution, winding up or liquidation of the Borrower (whether in bankruptcy, insolvency, or receivership proceedings, or upon an assignment for the benefit of creditors or otherwise), (ii) any other marshaling of the assets and liabilities of either the Borrower, or (iii) the reorganization of the Borrower (the events in clauses (i), (ii) and (iii) above (hereinafter collectively referred to as the "Shipowner's Insolvency"), the Secretary will be entitled to receive payment in full, in accordance with the terms of the Senior Loan Documents, of all sums owing under or in respect of the Senior Indebtedness before the Subordinated Lender shall be entitled to receive from the Borrower any payment owing under the Subordinated Notes.

(c) Upon default by the Borrower under any of the Senior Indebtedness or Senior Loan Documents, or the Borrower's Insolvency, the Secretary is hereby irrevocably authorized and empowered (in its own name or in the name of the Subordinated Lender or otherwise), but shall have no obligation, to demand, sue for, collect and receive every payment or Distribution referred to herein, and give acquittance for and to file claims and proofs of claim and to take such other action with respect to the Subordinated Notes as the Secretary may deem necessary or advisable for the exercise or enforcement of any of its rights or interests hereunder.

8. Financial Statements. The Borrower shall furnish, or cause to be furnished, to the Subordinated Lender (a) within 105 days after the close of each fiscal year, its year end audited financial statements as of the end of such fiscal year, including a balance sheet and related profit and loss and cash flow statements; and (b) within 45 days after the close of each fiscal quarter, its internally prepared quarterly financial statements containing substantially the same information required in (a) above and certified by the Borrower's chief financial officer. The financial statements reference in (a) and (b) above shall be prepared in accordance with generally accepted accounting principles consistently applied on a uniform basis, except as may be disclosed therein.

9. Board of Directors. During the term of this Subordinated Loan Agreement, Subordinated Lender shall have the right to have one observer present at all scheduled meetings of the Board of Directors of Borrower. Such observer shall be entitled to notice of meetings provided to all other members of the Board of Directors of Borrower.

10. Exclusivity. The Subordinated Lender shall supply and support U.S.-built Jones Act compliant high-speed roll-on/roll-off catamaran ferry type vessels of 74 meters in length over all (LOA) or greater for commercial U.S.-flag domestic cargo and passenger service exclusively to the Borrower and to no other party for use within waters of the State of Hawaii for a period of three years beginning December 20, 2003.

5

11. **Liens.** The Subordinated Lender hereby agrees that it shall not hold or seek any liens, mortgages, security interests or other encumbrances on the Vessels or any other property of the Borrower in connection with the Subordinated Notes, provided, however, that Borrower agrees to use its best efforts to obtain the approval of the Senior Lender for a subordinated second mortgage in favor the Subordinated Lender to be effective at the time of Delivery of each Vessel to secure the Purchaser's obligations under this Subordinated Loan Agreement and Subordinated Loan.

12. **Assignments and Other Instruments.** The Subordinated Lender agrees to execute and deliver to the Secretary such assignments or other instruments as may be requested by the Secretary to enable them to enforce their respective rights hereunder, and to collect and retain for the exclusive benefit of the Secretary any and all Distributions which may be made at any time on account of all or any portion of this Agreement if the Borrower is and remains in default on any of the Senior Indebtedness.

13. **No Liability for Actions by the Secretary.**

    (a) The parties hereto agree that the Secretary shall not be liable for any action or failure to act under or in connection with any of the documents or instruments creating the Senior Liens or the Senior Indebtedness, it being understood that the decision of whether and when to act and the manner of proceeding under such instruments and documents are within the sole discretion of the Secretary and shall not be affected in any manner by the existence of the Subordinated Notes. The parties hereto further agree that such obligations as may be imposed under the documents and instruments creating the Senior Liens or under the Uniform Commercial Code or other applicable laws shall run exclusively to the benefit of the Secretary and may be enforced or waived by the Secretary and not by the Subordinated Lender.

    (b) Any amendment or supplement to the Senior Loan Documents or any increase or release of security by the Secretary or any increase in the principal amount of the Senior Indebtedness or the rate of interest payable thereon shall not affect the enforceability of this Agreement, and such amendment or supplement to the Senior Loan Documents or release of security by the Secretary or increase in principal amount of the Senior Indebtedness or on the rate of interest payable thereon may be made without notice to or consent of the Subordinated Lender.

14. **Duty to Inform the Subordinated Lender.** Borrower shall immediately inform Subordinated Lender of any defaults arising under the Senior Loan Documents. Nothing in this Agreement shall be construed as imposing on the Secretary an obligation to inform the Subordinated Lender of any defaults arising under the Senior Loan Documents or to provide the Subordinated Lender with any financial or other information of which the Secretary is or becomes aware with respect to the Borrower. Without limiting the generality of the foregoing, the Secretary shall not be obligated to provide the Subordinated Lender with a notice that an event of default has occurred under the Senior Loan Documents.

15. **Rights of Subrogation.** The Subordinated Lender agrees that no payment or distribution to the Secretary pursuant to the provisions of this Agreement shall entitle the

Subordinated Lender to exercise any rights of subrogation in respect thereof until the Senior Indebtedness has been paid in full.

16. <u>Agreement Controls</u>. Notwithstanding any provision to the contrary in the Subordinated Notes or any other agreements to which the Subordinated Lender or the Borrower are a party, whether such agreement is now in existence or shall hereafter arise, the parties agree that the terms and conditions of this Agreement shall control and govern any conflict between the provisions of this Agreement and the Subordinated Notes or other documents described in this section.

17. <u>Assignment of Agreement</u>. This Agreement shall not be assigned by the Subordinated Lender without the express prior written consent of the Borrower, which consent shall not be unreasonably withheld. Borrower shall cooperate with Subordinated Lender with respect to any approved assignment or transfer of this Agreement or the related Notes.

18. <u>Subordination of Set-Off and Other Rights</u>. The Subordinated Lender's right of contractual set-off or any other recoupment or common law right of set-off or any other claim to the funds of the Shipowner shall be subject to the terms and conditions of this Agreement.

19. <u>Benefit of Agreement</u>. This Agreement is for the benefit of the Secretary and may not be waived, supplemented, amended, or modified without the express written consent of the Secretary, and the Secretary shall have the right to enforce the terms and conditions of this Agreement in any appropriate court of law.

20. <u>Term</u>. This Agreement shall remain in full force and effect until the earlier of the payment in full of the Subordinated Notes or the date that all of the Senior Loan Documents are no longer in full force and effect.

21. <u>Notices</u>. All notices and other communications provided for in this Subordinated Loan Agreement shall be in writing or (unless otherwise specified) by telex, telegram, or facsimile transmission and shall be mailed (with first class postage prepaid, return receipt requested) or sent or delivered to each party at the following address set forth under its name, or at such other address as shall be designated by such party in a written notice to each other party. Except as otherwise specified, all such notices and communications if duly given or made shall be effective upon receipt.

| | |
|---|---|
| Shipowner as: | HAWAII SUPERFERRY, INC.<br>Attn: CEO<br>575 Cooke Street, Suite A- PMB 1507<br>Honolulu, HI 96813 |
| Subordinated Lender: | AUSTAL USA, LLC<br>Attn: CEO<br>100 Dunlap Drive<br>Mobile, AL 36602 |

7

22. **Currency.** The proceeds of all Loans made hereunder and of all payments of principal and interest on and other Distributions made under the Subordinated Notes shall be in United States Dollars ($).

23. **Governing Law.** This Subordinated Loan Agreement and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the federal laws of the United States if they are applicable, but if they are inapplicable then in accordance with the laws of the State of New York.

24. **Counterparts.** This Subordinated Loan Agreement may be executed in one or more counterparts, and by means of original or facsimile execution, each of which shall be deemed an original. Such counterparts shall constitute but one and the same instrument and shall be binding upon, and shall inure to the benefit of, each of the undersigned individually as fully and completely as if all had signed one instrument.

IN WITNESS WHEREOF, this Subordinated Loan Agreement has been executed by the parties as of the day and year first written.

HAWAII SUPERFERRY, INC.,
as Borrower

By: _____
Name: TIMOTHY DICK
Title: CHAIRMAN

AUSTAL USA, LLC,
as Subordinated Lender

By: _____
Name:
Title:

APPROVED:
MARITIME ADMINISTRATION

By: _____
Name:
Title:

8

22. <u>Currency</u>. The proceeds of all Loans made hereunder and of all payments of principal and interest on and other Distributions made under the Subordinated Notes shall be in United States Dollars ($).

23. <u>Governing Law</u>. This Subordinated Loan Agreement and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the federal laws of the United States if they are applicable, but if they are inapplicable then in accordance with the laws of the State of New York.

24. <u>Counterparts</u>. This Subordinated Loan Agreement may be executed in one or more counterparts, and by means of original or facsimile execution, each of which shall be deemed an original. Such counterparts shall constitute but one and the same instrument and shall be binding upon, and shall inure to the benefit of, each of the undersigned individually as fully and completely as if all had signed one instrument.

IN WITNESS WHEREOF, this Subordinated Loan Agreement has been executed by the parties as of the day and year first written.

HAWAII SUPERFERRY, INC.,
as Borrower

By: _____
Name:
Title:

AUSTAL USA, LLC,
as Subordinated Lender

By: _____
Name: CHRIS PEMBERTON
Title: VICE PRESIDENT
SALES & MARKETING

APPROVED:
MARITIME ADMINISTRATION

By: _____
Name:
Title:

8