UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | IN ADMIRALTY |
| ALAKAI (O.N. 1182234), their boilers, engines, machinery, masts, spars, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances, etc., *in rem*, | Civil No.: 2:10cv232 |
| Defendant. | |

**UNITED STATES' OPPOSITION TO
HORNBLOWER MARINE SERVICES , INC. AND HMS-HAWAII, INC.'S
MOTION FOR SUMMARY JUDGMENT TO SET PRIORITY OF CLAIMS OF
HORNBLOWER MARINE SERVICES , INC. AND HMS-HAWAII, INC.**

**INTRODUCTION**

Because the United States' lien enjoys priority under the law, the United States has, by an earlier motion (Docket No.'s 60 & 61), sought Summary Judgment pursuant to FED. R. CIV. P. 56 against Austal USA, LLC, Hornblower Marine Services, Inc., and HMS - Hawaii, Inc.  By their cross-motion, Hornblower Marine Services, Inc., and HMS - Hawaii, Inc. (jointly "Hornblower") seek Summary Judgment on the same issues, rewording one of their allegations to argue that their lien enjoys priority.

The "necessaries" debts claimed by Hornblower prior to May 30, 2007 did not create maritime liens because the ALAKAI was not yet a vessel to which liens might attach and the "necessaries" liens accrued by Hornblower once the ALAKAI was a vessel are primed under the law by the United States' first preferred mortgage lien.

Hornblower's reworded allegation that it paid wages on the shipowner's behalf rather than "advanc[ing]" money "to cover these payments" raises a genuine issue of material fact concerning their claimed "wage lien" in the amount of $21,025.  The documents Hornblower attaches as exhibits were not produced prior to the filing of the motion last week and the United States requests time to conduct discovery concerning the claim for that $21,025.

## STATEMENT OF MATERIAL FACTS
## AS TO WHICH THE UNITED STATES CONTENDS THERE IS NO GENUINE ISSUE

The following facts establish the propriety of the United States' mortgage lien and its preemption of the liens asserted by all Intervening Plaintiffs.

As set forth in the United States' Verified Complaint and the memorandum in support of the United States' motion for Summary Judgment, the final documentation by which the ALAKAI became a vessel was provided to the Coast Guard's National Vessel Documentation Center at Falling Waters, West Virginia ("NVDC") on May 30, 2007.  It was on that day that the shipbuilder, Austal USA, LLC ("Austal"), and the shipowner, Hawaii Superferry, Inc. ("HSF" or "Superferry"), agreed that the ALAKAI was "substantially complete" and ready for delivery. With the completion of the application paperwork and the delivery of the ALAKAI under the Protocol of Delivery and Acceptance, the NVDC issued a Certificate of Documentation, Form CG-1270 on May 30, 2007, at 11:15 a.m.

In its Complaint in Intervention (Docket No. 17-1), Hornblower alleges that:

6.  Although [the] Management Services Agreement and the Memo of Understanding (collectively "Management Agreement") made HSF responsible to pay the wages and benefits to the seamen assigned to the ALAKAI, HSF did not pay these wages.

7.  Hornblower advanced $42,050.00 to cover these payments.

2

**ARGUMENT**

I.    HORNBLOWER HAS NO MARITIME LIEN PREDATING THE UNITED STATES'
      MORTGAGE BECAUSE MARITIME LIENS MAY ATTACH TO A VESSEL ONLY
      AFTER THE VESSEL IS COMPLETED AND DOCUMENTED.

As the United States pointed out in the memorandum in support of its motion for

Summary Judgment, there is no subject matter jurisdiction in admiralty by which a maritime lien

might be enforced until a vessel's construction is sufficiently advanced to discharge the functions

for which the ship is intended.  No maritime lien may attach to a vessel until the ship is entirely

completed and ready to be delivered into service.  *The Francis McDonald*, 254 U.S. 242 (1920);

*Chase Manhattan Financial Services, Inc. v. McMillian*, 896 F.2d 452 (10th Cir. 1990); *Hyundai*

*Heavy Industries Co., Ltd. v. M/V SAIBOS FDS*, 163 F. Supp. 2d 1307, 1314 (N. D. Ala. 2001).

With regard to the ALAKAI, Austal announced to the interested financiers that the ship

was delivered to Superferry at 10:15 a.m. on May 30, 2007.  Superferry had completed the

application by that time, so the Certificate of Ownership of Vessel was issued at 11:15 a.m. on

May 30, 2007.  Accordingly, it was then that maritime liens for necessaries could first attach to

the ALAKAI.

While Hornblower correctly states that any <u>maritime</u> lien attaching prior to a preferred

mortgage is a preferred maritime lien under 46 U.S.C. § 31301(5)(a), which would enjoy priority

over the mortgage pursuant to 46 U.S.C. § 31326(b)(1), the ALAKAI was not subject to

maritime liens before 11:15 a.m. on May 30, 2007 when the United States first preferred

mortgage lien attached.  The shipowner created debts to Hornblower before the United States'

first preferred mortgage attached, but those debts were not maritime liens against the ALAKAI

because the ALAKAI was not yet a vessel to which maritime liens might attach. *Chase*

3

*Manhattan,* 896 F.2d at 457; *Hyundai Heavy Industries*, 163 F. Supp. 2d at 1314.  All of the

shipowner's debts to Hornblower that were created before May 30, 2007 are personal obligations

that are not maritime claims and are not, therefore, recoverable in this *in rem* action.  *Id*.

The precedents cited by Hornblower do not address the issue of when maritime liens for

necessaries may attach to new construction vessels.  The preferred mortgage at issue in *Bank

One, Louisiana N.A. v. MR. DEAN MV*, 293 F.3d 830 (5th Cir. 2002), financed the purchase of an

existing vessel at a judicial sale, so no issue of new construction arose.  *Redwood Empire

Production Credit Ass'n v. Fishing Vessel Owners Marine Ways, Inc*., 530 F. Supp. 75 (W. D.

Wash. 1981), prioritized the maritime liens accrued by an existing vessel refinanced while

undergoing repairs.  The issue in *Caterpillar Financial Services Inc. v. ALEUTIAN CHALICE*,

1994 WL 468187 (W. D. Wash. February 14, 1994), was whether unpaid insurance "calls"

created a maritime lien and the timing of the two liens' attachment was not controverted.  *Morse

Dry Dock & Repair Co. v. THE NORTHERN STAR*, 271 U.S. 552 (1926), applied an archaic

requisite of the now-superseded Ship Mortgage Act of 1920 to grant priority to a necessaries lien

arising after the attachment of a mortgage but before its "indorsement" on the ship's papers.  No

"indorsement" is required under the current statute.

II.     HORNBLOWER'S MARITIME NECESSARIES LIENS THAT POST-DATE THE
        UNITED STATES' MORTGAGE ARE PRIMED BY THE MORTGAGE.

The United States' lien is a preferred mortgage as defined in 46 U.S.C § 31322 and was

recorded with the Coast Guard on May 30, 2007, as a first preferred fleet mortgage.  The

subsequent maritime liens asserted by Hornblower arise from necessaries and services rendered

to the ALAKAI after it became a vessel, making them liens for necessaries as defined at 46

U.S.C. § 31301(4), rather than preferred maritime liens as defined at 46 U.S.C. § 31301(5). The United States' lien therefore enjoys priority and must be satisfied as far as possible before Hornblower takes any proceeds of the sale. 46 U.S.C. § 31326; *Midlantic National Bank v. Sheldon*, 751 F.Supp. 26 (E.D.N.Y. 1990).

III.   HORNBLOWER'S REWORDED ALLEGATIONS CONCERNING CREW WAGES
       RAISES A GENUINE ISSUE OF FACT ON WHICH DISCOVERY SHOULD BE
       CONDUCTED

In its Complaint in Intervention, Hornblower alleged that it "advanced" money to the shipowner, Superferry, with which Superferry paid its own employees. The transactions as there described potentially allowed the _payment_ of the wages, but did not legally or logically create a lien for the _non-payment_ of wages or any rights of subrogation to such a lien.

Hornblower now asserts that:

> Under the terms of the contract, HSF was responsible to pay [the crew's] wages.
> However, because it did not, Hornblower paid the wages directly to the crew and
> has a preferred maritime lien in the amount of $21,025 against the vessel.

(Docket No. 69, p. 5). To support this allegation, Hornblower attaches copies of a 51-page Management Services Agreement and 17 pages of invoices, not previously provided to the other parties.

If Hornblower employed and paid crewmen for work benefitting the vessel under employment agreements with the crewmen and agency relationships with the vessel owner, then it may well have a subrogated seaman's wage lien under the criteria set forth in *First National Bank of Jefferson Parish v. M/V LIGHTNING POWER*, 851 F.2d 1543 (5th Cir. 1988); *General Electric Credit & Leasing Corp. v. DRILL SHIP MISSION EXPLORATION*, 668 F.2d 811 (5th Cir. 1982); *International Paint Co. v. M/V MISSION VIKING*, 637 F.2d 382 (5th Cir. 1981); and

5

*Bank of New Orleans v. OIL SCREW TRACY MARIE*, 455 F. Supp. 78 (W.D. La.), *aff'd*, 580 F.2d 808 (5th Cir. 1978).  Hornblower's wording remains indefinite on the critical issue of who actually made the wage payments to the crew.  The characterization of the lien depends on which entity cut the check or transferred the money into the crewmen's accounts and nothing attached to Hornblower's motion indicates which party did that.  The United States would like to conduct discovery on the issue and requests that Summary Judgment be withheld for the $21,025 claimed as a subrogated seamen's wage lien by Hornblower.

## CONCLUSION

The United States' lien has priority over all claims asserted by Hornblower Marine Services, Inc. and HMS - Hawaii, Inc., except, possibly, the claim for a subrogated seamen's wage claim in the amount of $21,025.  It is, therefore, appropriate to award the United States $24,627,210.21 of the $24,648,235.21 in sale proceeds currently held in an account by the Maritime Administration.  The remaining $21,025 will remain on account with MARAD as discovery is conducted concerning the alleged subordinated seamen's wage lien.

The $148,000,000-plus debt on the preferred mortgage far exceeds the $24,627,210.21 to which the United States is entitled.  The $24,627,210.21 should be credited against the $148,000,000-plus debt.  Accordingly, the proposed judgment provides for disbursal of $24,627,210.21 of the remaining sales proceeds to the Maritime Administration in partial satisfaction of the First Preferred Ship Mortgage.

Dated: December 17, 2010

Respectfully submitted,

TONY WEST
Assistant Attorney General

      S/Edmund M. Ferguson
EDMUND M. FERGUSON
Virginia State Bar 74877
Trial Attorney
PETER G. MYER
Senior Trial Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC 20044-4271
(202) 616-4029
Fax: (202) 616-4159
Edmund.Ferguson@usdoj.gov

7

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 17, 2010, the foregoing document was

filed with the Clerk of Court and served by first class mail, postage prepaid, on the

following interested parties and holders of liens filed with the United States Coast Guard:

Clear Thinking Group
401 Towne Centre Drive
Hillsborough, New Jersey  08844

Craig Wolfe, Benjamin Blaustein
Kelley Drye & Warren LLP
101 Park Avenue
New York, New Yorrk 10178

Austal USA LLC
1 Dunlap Drive
Mobile, Alabama 36602

HMS-Hawaii, Inc. and
Hornblower Marine Services, Inc.
115 East Market Street
New Albany, Indiana 47150

State of Hawaii
Department of Transportation
869 Punchbowl Street
Honolulu, Hawaii 96817

s/Edmund M. Ferguson
EDMUND M. FERGUSON
Virginia State Bar 74877
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC 20044-4271
(202) 616-4029
Fax: (202) 616-4159
Edmund.Ferguson@usdoj.gov